UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOEL KRIEGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>ATHEROS COMMUNICATIONS, INC., DR. WILLY C. SHIH, DR. TERESA H. MENG, DR. CRAIG H. BARRATT, ANDREW S. RAPPAPORT, DAN A. ARTUSI, CHARLES E. HARRIS, MARSHALL L. MOHR, CHRISTINE KING, QUALCOMM INCORPORATED, and T MERGER SUB, INC.,<br><br>Defendants. | Case No.: 11-CV-00640-LHK<br><br>ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION |

This case is before the Court on Plaintiff's motion for preliminary injunction to enjoin a shareholder vote currently scheduled for March 7, 2011. In their opposition papers, Defendants Qualcomm Incorporated and T Merger Sub, Inc. asked the Court to stay this matter in deference to similar proceedings currently underway in the Delaware Court of Chancery. The Court heard oral argument on March 3, 2011. Having considered the submissions and arguments of the parties, the Court finds it appropriate to stay Plaintiff's state-law class action claims pursuant to the *Colorado River* doctrine. Because Plaintiff's motion for preliminary injunction relies on the merits of the stayed state-law claims and does not address Plaintiff's individual federal claims, the Court denies Plaintiff's motion for preliminary injunction.

1

## I. Background

This action arises out of the proposed merger of Atheros Communications, Inc. ("Atheros") and Qualcomm Incorporated ("Qualcomm"). Atheros, a Delaware corporation headquartered in California, is a leading provider of innovative technologies for wireless and wired communications products. Compl. ¶ 11. Qualcomm, also a Delaware corporation headquartered in California, designs and manufactures semiconductors for wireless phones and other equipment for advanced commercial wireless applications. Compl. ¶ 21. Atheros and Qualcomm have a longstanding relationship and have engaged in strategic collaboration for the development of wireless communications technology since at least 2006. Compl. ¶¶ 21, 45-48, 53-56.

On January 5, 2011, Atheros and Qualcomm issued a press release announcing that they had entered into a merger agreement in which Qualcomm would acquire Atheros in a deal valued at approximately $3.2 billion. Compl. ¶ 2. Under the terms of the merger, Atheros shareholders will receive $45.00 in cash for each share of Atheros that they own. *Id.* Officers and directors of Atheros and Qualcomm described the merger as a natural extension of the companies' prior collaboration and an opportunity for the companies to build upon each others' strengths. Compl. ¶¶ 69-70. Despite these positive public statements, Plaintiff claims that the merger is fundamentally unfair to Atheros stockholders and that individual Atheros directors failed to take steps to maximize the value of Atheros to its public shareholders. Compl. ¶ 71, 127. Specifically, Plaintiff alleges that the $45 per share offer undervalues Atheros stock, Compl. ¶¶ 71-85; that the officers and directors who negotiated the merger have conflicts of interest, Compl. ¶¶ 89-94; and that the Atheros Board never seriously considered bids from other prospective bidders, but instead employed preclusive deal protection devices to prevent an open auction of the company, Compl. ¶¶ 97-103. Plaintiff claims, further, that the Proxy Statement Atheros filed with the SEC fails to provide material information that shareholders require in order to make an informed decision on whether to vote their shares in favor of the merger. Compl. ¶ 105. In particular, Plaintiff alleges that the Proxy fails to fully describe the sales process leading up to the merger and fails to disclose the underlying methodologies and data relied upon by Atheros's financial advisor in recommending the deal. Compl. ¶¶ 105-06.

On February 10, 2011, Plaintiff filed a complaint detailing these allegations in the Northern District of California. The Complaint names eleven corporate and individual defendants, including: Atheros Communications, Inc.; Atheros directors Dr. Willy Shih, Dr. Teresa Meng, Dr. Craig Barratt, Andrew Rappaport, Dan Artusi, Charles Harris, Marshall Mohr, and Christine King (collectively, the "Individual Defendants"); Qualcomm Incorporated; and T Merger Sub, Inc., a wholly-owned subsidiary of Qualcomm. Plaintiff brings the case both as an individual action and a shareholder class action on behalf of the public shareholders of Atheros. Compl. ¶ 1. Specifically, Plaintiff brings two federal causes of action as individual claims only: (1) a claim against Atheros and the Individual Defendants for violations of Sections 14(a) and 14(e) of the Securities Exchange Act; and (2) a claim against the Individual Defendants for violations of Section 20(a) of the Securities Exchange Act. Plaintiff also brings two state-law causes of action on behalf of himself and the proposed class of Atheros shareholders: (1) a claim against the Individual Defendants for breach of fiduciary duties; and (2) a claim against Atheros and Qualcomm for aiding and abetting the Individual Defendants' breach of fiduciary duty. Plaintiff seeks to maintain a class action only with regard to the state-law claims.

On February 11, 2011, Atheros filed a Definitive Proxy with the SEC that set a shareholder vote on the proposed merger for March 7, 2011. On February 15, 2011, Plaintiff responded by filing a motion for preliminary injunction to enjoin the scheduled shareholder vote and to order expedited discovery.[1] The Court initially set a hearing on the preliminary injunction motion for March 1, 2011. Subsequently, however, the Court learned that Defendants were already involved in similar litigation in both the Delaware Court of Chancery and the Superior Court of Santa Clara County. Defendants informed the Court that Vice Chancellor John Nobel had consolidated the five cased filed in the Delaware court and set a preliminary injunction hearing in those cases for March 1, 2011. Based on the pending Delaware action, Defendants requested a brief continuance of the motion hearing and sought permission to request a stay, pursuant to *Colorado River Water*

---

[1] Before the hearing on Plaintiff's motion, the parties reached an agreement on expedited discovery pursuant to which Defendants agreed to produce documents and deposition transcripts from related Delaware actions, while preserving the general stay of discovery mandated under the Private Securities Litigation Reform Act. Pl.'s Reply 1. Accordingly, Plaintiff's request for expedited discovery is now moot.

3

Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

*Conservation Dist. v. United States*, 424 U.S. 800 (1976), in their opposition briefs. The Court granted Defendants' requests and continued the hearing to March 3, 2011. The Court will first address Defendants' request to stay this action and then turn to Plaintiff's motion for preliminary injunction.

## II. Colorado River Abstention

In their opposition brief, Defendants Qualcomm Incorporated and T Merger Sub, Inc. (the "Qualcomm Defendants") argue that this Court should abstain from hearing Plaintiff's claims and stay this action pursuant to the doctrine articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The Qualcomm Defendants represent that since January 5, 2011, when Atheros announced the merger agreement with Qualcomm, thirteen separate class action complaints have been filed against Atheros, its directors, and the Qualcomm Defendants. Between January 5 and January 19, 2011, seven class action complaints were filed in the Santa Clara County Superior Court. Between January 6 and January 18, 2011, five similar class action complaints were filed in the Delaware Court of Chancery. The instant federal action, in contrast, was not filed until over a month after the merger announcement, on February 10, 2011.

The Qualcomm Defendants claim that the Delaware actions have proceeded expeditiously: the Court of Chancery has consolidated the five cases and appointed lead Plaintiffs and co-lead counsel; the lead Plaintiffs have filed an amended consolidated complaint; the parties have agreed to the scope of expedited discovery and negotiated a protective order; and fact discovery is underway. The Qualcomm Defendants argue that the Delaware actions will provide the full measure of relief sought by Plaintiff in this federal action, and they therefore urge this Court to abstain from hearing the federal case pursuant to the *Colorado River* doctrine. They suggest that, at a minimum, the Court should abstain from hearing Plaintiff's state-law claims, which the parties agree are controlled by Delaware law. Plaintiff opposes Defendants' request to stay the federal action and argues that abstention under *Colorado River* is not appropriate in this case.

### A. Legal Standard

Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of

4
Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

"[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "Exact parallelism" between the state and federal actions is not required; it is enough if the two actions are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Nonetheless, the Ninth Circuit has emphasized that "the *Colorado River* doctrine is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817). Accordingly, a stay of proceedings pursuant to the *Colorado River* doctrine is appropriate only where "exceptional circumstances" are present. *Id.*

*Colorado River* and subsequent cases set forth seven factors, that, although not exclusive, are relevant to whether it is appropriate to stay proceedings: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping. *Id.* at 870. These factors should be weighed in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16, 21. The Ninth Circuit has also cautioned that the existence of a substantial doubt as to whether the state proceedings will resolve the federal action generally precludes the granting of a stay pursuant to *Colorado River*. *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

### B. Claims Within Exclusive Federal Jurisdiction

Plaintiff argues that *Colorado River* does not apply to this case because the Complaint asserts claims under the Securities Exchange Act that fall within the exclusive jurisdiction of the federal courts. *See* 15 U.S.C. § 78aa(a) (providing for exclusive jurisdiction over violations of the Exchange Act and regulations thereunder). The Court agrees that Ninth Circuit precedent is quite

5

clear on this point: the Ninth Circuit has repeatedly stated that *Colorado River* abstention applies only to claims under the concurrent jurisdiction of the federal and state courts and that district courts lack discretion to stay proceedings as to claims within exclusive federal jurisdiction. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993) ("the circuit courts, and the Ninth Circuit in particular, have uniformly held that a district court may not grant a stay in [cases involving claims subject to exclusive federal jurisdiction]); *Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir. 1989) ("the Colorado River doctrine only applies to claims under the concurrent jurisdiction of the federal and state courts"); *Silberkleit v. Kantrowitz*, 713 F.2d 433, 436 (9th Cir. 1983) ("the district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the wise judicial administration exception").

The Qualcomm Defendants do not dispute that Plaintiff's Exchange Act claims fall within exclusive federal jurisdiction. They argue, rather, that abstention is nonetheless permissible in this instance because Plaintiff's Exchange Act claims are duplicative of his Delaware-law claims for breach of fiduciary duty and aiding and abetting. Relying heavily on the Northern District of Illinois decision in *International Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273 (N.D. Ill. Aug. 27, 1996), the Qualcomm Defendants argue that where a federal plaintiff alleges Exchange Act claims that are essentially the same as state-law claims brought in parallel state proceedings, abstention under *Colorado River* is appropriate. In *Jensen*, the court considered whether to stay a federal action based on Section 14(a) of the Securities Exchange Act which sought the same relief as a state-law action pending in the Delaware state court. *Id.* at *1-2. The federal defendant (who sought to enjoin a shareholder meeting) argued that Seventh Circuit precedent, similar to the Ninth Circuit precedent discussed above, barred the district court from staying proceedings involving claims within exclusive federal jurisdiction. *Id.* at *4. The Northern District of Illinois rejected this argument, however, finding the Seventh Circuit precedent "distinguishable . . . because the relationship and nature of the exclusively federal claim and the state law claim are so decisively similar here." *Id.* The court noted that Delaware common law recognizes claims based on material omissions in proxies similar to those brought under Section 14(a) of the Exchange Act, and that Delaware courts apply the same standard for materiality as the

6

1  Supreme Court has recognized for Section 14(a) claims. *Id.* The court therefore concluded that

2  "[s]ince Emerson's motion for a temporary restraining order and injunction against Jensen in

3  Delaware court is based on Delaware law, requests virtually the same relief as the motion in this

4  court, and ensures that Emerson has a remedy outside of the 1934 Act, this court is not without

5  power to exercise its discretion to hear or abstain from this case." *Id.* at *5. The Qualcomm

6  Defendants argue that here, as in *Jensen*, the Delaware court will necessarily adjudicate Plaintiff's

7  claim that the proxy contains material misstatements or omissions under the same standard applied

8  to Exchange Act claims, and that the Delaware action can provide full and adequate relief to

9  Plaintiff and the proposed Plaintiff class. They thus urge the Court to follow *Jensen* and abstain

10  from the federal action in its entirety.

11  The Court agrees that *Jensen* is on point and finds its reasoning persuasive.[2] Nonetheless,

12  the Court finds that the weight of authority, both in the Ninth Circuit and other circuits, compels a

13  different result. As discussed above, settled Ninth Circuit case law establishes a clear rule

14  precluding abstention as to claims within exclusive federal jurisdiction. District courts within the

15  Ninth Circuit have considered themselves bound by this precedent, even where the *Colorado River*

16  factors might otherwise favor a stay.[3] *See In re Countrywide Financial Corp. Derivative*

17  *Litigation*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (agreeing that a stay of Exchange Act

18  claims would not be appropriate and staying only claims based on state law); *City and County of*

---

[2] It is worth noting that more recent Northern District of Illinois cases have distinguished *Jensen* and found that if a federal claim cannot be asserted in state court, abstention as to that claim ordinarily is not appropriate. *See Oakland County Employees' Retirement System v. Massaro*, 702 F. Supp. 2d 1012, 1017, 1019-20 (N.D. Ill. 2010); *Prominent Consulting LLC v. Allen Bros.*, Inc., 543 F. Supp. 2d 877, 883-84 (N.D. Ill. 2008). Nonetheless, these cases suggest that the decision in *Jensen* may be justified on grounds that "both the state and federal courts in *Int'l Jensen* would have had to engage in precisely the same analysis applying essentially the same legal standards." *Prominent Consulting*, 543 F. Supp. 2d at 883.

[3] The Qualcomm Defendants also rely on the Northern District of California decision in *Classen v. Weller*, 516 F. Supp. 1243 (N.D. Cal. 1981). *Classen* rejected the argument that the presence of an exclusive federal claim precluded abstention under *Colorado River* and stated that "[w]here the issues underlying federal claims may be resolved through the adjudication of state claims, even though the state court may be impotent to consider the federal allegations, and where the 'remedies afforded for the (state) wrongs' adequately protect federal interests, a stay of the federal proceedings is appropriate." *Id.* at 1275. However, *Classen* was decided prior to the Ninth Circuit decisions in *Silberkleit* and *Minucci*, which established the *Colorado River* doctrine does not apply to exclusive federal claims.

*San Francisco v. United States*, 930 F. Supp. 1348, 1352-55 (N.D. Cal. 1996) (disagreeing with bright-line rule prohibiting stay of exclusive federal claims, but concluding that settled Ninth Circuit law deprived the court of discretion to stay such claims).  In addition, district courts within the Second and Fifth Circuits, which apply a rule similar to that of the Ninth Circuit, have considered cases substantially similar to this one and concluded that a stay of Exchange Act claims is not appropriate.[4]  *See, e.g.*, *Harrison v. XTO Energy, Inc.*, 705 F. Supp. 2d 572, 576-77 (N.D. Tex. 2010) (rejecting argument that similarity between Delaware-law breach of fiduciary duty claims and Exchange Act § 14(a) and 20(a) claims renders abstention appropriate); *In re Comverse Technology, Inc. Derivative Litigation*, No. 06-CV-1849 (NGG)(RER), 2006 WL 3193709, at *3 (E.D.N.Y. Nov. 2, 2006) ("given the exclusive jurisdiction of the federal courts over Exchange Act claims, courts confronted with *Colorado River* abstention requests in cases involving such claims have routinely denied those requests"); *SST Global Technology, LLC v. Chapman*, 270 F. Supp. 2d 444, 463-64 (S.D.N.Y. 2003) (rejecting argument that abstention was appropriate because a pending Delaware action would resolve the factual issues underlying federal Exchange Act claims).

The Northern District of Texas decision in *Harrison* is particularly instructive.  There, as here, the federal plaintiffs brought claims under sections 14(a) and 20(a) of the Securities Exchange Act alleging that the defendants issued proxy statements containing materially misleading information in order to obtain shareholder approval of a merger.  *Harrison*, 705 F. Supp. 2d at 574.  The defendants moved to stay in deference to actions in Texas and Delaware state courts that alleged Delaware-law claims of breach of fiduciary duty.  *Id.* at 574-75.  The *Harrison* court noted that despite the similarities between Delaware law and the Exchange Act, "the federal scheme of disclosure is not replicated in Delaware law."  *Id.* at 577 (quoting *Loudon v. Archer-*

---

[4] It is true that in *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987 (S.D.N.Y. 1990), the Southern District of New York abstained from hearing exclusive federal claims brought under Section 10(b) of the Exchange Act.  The facts of *Lorentzen* were rather extraordinary, however, and distinguishable from the facts of this case.  For instance, the court stated that "on the basis of the facts of this particular case, we conclude that plaintiff's decision to raise his dormant § 10(b) claim more than a year and a half after the filing of his state court complaint—and only after the state court ruled adversely to his interests on two separate occasions—appears to be an attempt by plaintiff to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping."  *Id.* at 993.  The circumstances of this case are not comparable.

*Daniels-Midland Co.*, 700 A.2d 135, 141 n. 18 (Del. 1997)). It reasoned, moreover, that although the state actions sought the same relief and depended upon the same facts alleged in the federal action, because claims under the Securities Exchange Act could not be litigated anywhere but in a federal court, there was no way that a state court could dispose of those claims. *Id*. Thus, relying in part on Ninth Circuit law, the *Harrison* court held that a stay of the Exchange Act claims was not appropriate. *Id.* at 576-78.

The Court finds that the reasoning and analysis in *Harrison* applies equally to the Exchange Act claims asserted in this case. Although Plaintiff's Exchange Act claims present similar factual issues and may turn on a similar legal standard as the breach of fiduciary duty claims asserted in the Delaware action, the fact remains that the Delaware court lacks authority to resolve Plaintiff's Exchange Act claims. Under Ninth Circuit law, therefore, a stay of these exclusive federal claims is not appropriate. The Court is somewhat concerned that this outcome permits forum-shopping and may encourage plaintiffs to add Exchange Act claims solely for the purpose of securing a separate federal forum and avoiding consolidation with previously filed state court actions. However, the Ninth Circuit has clearly held that a "district court has no discretion to stay proceedings as to claims within *exclusive* federal jurisdiction under the wise judicial administration exception." *Minucci*, 868 F.2d at 1115 (9th Cir. 1989) (quoting *Silberkleit v. Kantrowitz*, 713 F.2d at 436). Accordingly, the *Colorado River* doctrine does not provide grounds for staying Plaintiff's claims under the Securities Exchange Act, and Defendants' motion is therefore denied as to those claims.

### C. Partial Stay of Plaintiff's Delaware Law Class Claims

The Court's determination that it lacks discretion to stay Plaintiff's exclusive federal claims does not resolve the question of whether the Court may issue a partial stay, pursuant to *Colorado River*, only as to Plaintiff's state-law class claims. District courts within the Ninth Circuit have determined that a partial stay under *Colorado River* may be appropriate in cases where some, but not all, of a federal plaintiff's claims are pending in a parallel state action. In *Countrywide*, for instance, the Central District of California stayed class action claims brought under Delaware law in deference to parallel litigation pending in the Delaware Court of Chancery, but allowed the

9

Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

federal plaintiff's Exchange Act and shareholder derivative claims to proceed. 542 F. Supp. 2d at 1172. Similarly, this District has permitted collective action claims under the Federal Labor Standards Act to move forward, while staying related state-law class action claims in favor of a class action pending in state court. *Daugherty v. Oppenheimer & Co., Inc.*, No. C 06-7725 PJH, 2007 WL 1994187, at \*6 (N.D. Cal. July 5, 2007). Here, the Qualcomm Defendants suggest that the Court should, at a minimum, abstain from hearing Plaintiff's Delaware law class action claims. The Court agrees that a partial stay is warranted.

As indicated above, the Court must consider seven non-exclusive factors in determining whether it is appropriate to stay proceedings: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping. *Holder*, 305 F.3d at 870. Weighing the relevant factors in a flexible, pragmatic manner, the Court finds that, on balance, the factors favor of stay of the state-law class action claims.

First, the Court finds that factors (1), (2), and (7) are either not particularly relevant or do not support a stay of the state-law claims. As to factor (1), neither the state or federal court has established jurisdiction over a *res*, and this factor is therefore neutral. As to factor (2), although the Defendants are located in California, Plaintiff resides in Florida, and the corporate Defendants are incorporated in Delaware. While it is likely that many witnesses and documents are located in California, those witnesses and documents will have to be produced in connection with the Delaware litigation regardless of whether this Court stays Plaintiff's state-law claims. Accordingly, the convenience of the federal forum is a neutral factor in this case. Finally, as to factor (7), the Qualcomm Defendants argue that permitting Plaintiff to pursue a separate class action by filing in federal court after numerous similar cases have been filed in state court would promote forum-shopping. Defendants point out that mergers involving Delaware corporations routinely provoke a "filing Olympiad" in which plaintiffs' firms compete for the best seat at the

10
Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

1    table, resulting in duplicative litigation. *In re Topps Co. Shareholders Litigation*, 924 A.2d 951,

2    957 (Del. Ch. 2007). While this may be true, the Ninth Circuit has indicated that "forum shopping

3    weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by

4    the state court or to gain a tactical advantage from the application of federal court rules." *Travelers*

5    *Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). Here, Plaintiff maintains that he was

6    unaware of the twelve parallel state court actions when he filed in federal court. The Court finds

7    this surprising at best. However, there is no indication that Plaintiff sought to "avoid adverse

8    rulings made by the state court or to gain a tactical advantage from the application of federal court

9    rules." *Id.* The seventh factor, therefore, does not clearly support a stay.

10            The remaining factors, however, weigh in favor of a stay and together demonstrate the

11   exceptional circumstances required to stay proceedings under *Colorado River*. The third factor,

12   piecemeal litigation, may favor a stay when "different tribunals consider the same issue, thereby

13   duplicating efforts and possibly reaching different results." *Travelers*, 914 F.2d at 1369 (quoting

14   *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)).

15   Here, there is no question that maintaining the state-law class action claims in the federal action

16   would result in piecemeal litigation. The consolidated complaint in the Delaware Court of

17   Chancery involves substantially the same Defendants, the same proposed class of shareholders, and

18   virtually identical issues.[5] The state and federal actions both involve Delaware law claims for

19   breach of fiduciary duty and aiding and abetting, premised on nearly identical factual allegations

20   and theories of liability. Moreover, like the court in *Countrywide*, this Court agrees that concerns

21   about piecemeal litigation are heightened in this case due to the complexity of the litigation, the

22   presence of class-action claims, and the need to proceed expeditiously to address the proposed

23   merger. *See Countrywide*, 542 F. Supp. 2d at 1172-73. As the *Countrywide* court noted,

24   permitting the class claims to proceed in parallel could waste significant judicial resources and

25   create a risk of conflicting results that could impact thousands of shareholders. *See id.* In contrast,

---

[5] The consolidated complaint in the Delaware action names the individual Atheros directors and the Qualcomm Defendants, but does not name Atheros Communications, Inc. as a defendant. However, Ninth Circuit law does not require exact identity of parties to justify abstention, *Nakash*, 882 F.2d at 1416, and Plaintiff has not argued that the Delaware plaintiffs' failure to name Atheros directly should affect the *Colorado River* analysis.

11

Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

staying Plaintiff's state-law class action claims would permit this Court to consider the individual federal claims that cannot be raised in the Delaware action, while avoiding duplication of class action procedures and minimizing the risk of inconsistent results on a class-wide basis. Thus, while the possibility of piecemeal litigation alone is ordinarily not sufficient to justify a stay, here the Court believes that "exceptional circumstances exist which justify special concern about piecemeal litigation." *Travelers*, 914 F.2d at 1369. The Court thus finds that factor (3) favors a stay.

The fourth factor, the order in which jurisdiction was obtained by the concurrent forums, also slightly favors a stay. The Court agrees with Plaintiff that this factor should not be applied in a mechanical fashion based solely on the dates on which the parallel actions were commenced. *See Travelers*, 914 F.2d at 1370. Nonetheless, while the Delaware action has not yet progressed beyond discovery, it has taken important steps to move the litigation forward, including the appointment of lead Plaintiffs and counsel, negotiation of a protective order, and completion of an initial round of discovery. Because this action was filed over a month after the Delaware action, this Court, in contrast, has had little time to engage in case management or move the litigation forward. Accordingly, factor (4) weighs slightly in favor of a stay.

The fifth factor, whether federal law or state law provides the rule of decision on the merits, weighs more decisively in favor of a stay. The parties agree that Delaware law governs the state-law claims in both the federal and state court actions. As other courts have recognized, the Delaware Court of Chancery "unquestionably 'has a well-recognized expertise in the field of state corporation law'" and is "a particularly suitable forum to adjudicate those disputes." *Countrywide*, 542 F. Supp. 2d at 1173 (quoting *Strougo v. BEA Associates*, No. 98 Civ. 3725, 2000 WL 45714, at *5 (S.D.N.Y. Jan. 19, 2000)); *see also Kwon v. Yun*, 606 F. Supp. 2d 344, 365 (S.D.N.Y. 2009) (noting that Delaware courts "have far more expertise in construing their own law and are widely recognized as leaders in the area of corporate law"). Thus, the fact that Delaware corporate law provides the rule of decision on the merits of Plaintiff's state-law class action claims strongly favors a stay of those claims.

Case No.: 11-CV-00640-LHK
ORDER STAYING STATE LAW CLAIMS; DENYING MOTION FOR PRELIMINARY INJUNCTION

Finally, as for the sixth factor, the Court agrees with Defendants that the Delaware litigation will adequately protect the rights of Plaintiff and the proposed shareholder class. The Court has reviewed the consolidated Delaware complaint and found that the theories and facts alleged therein are extremely similar to those asserted in the federal action. Like the federal action, the Delaware cases seek to enjoin the scheduled shareholder vote and the proposed merger, to rescind any part of the merger that is consummated, and to require an accounting and the proper exercise of fiduciary duties by the Individual Defendants. There is no relief sought in the federal action that cannot be obtained, based on similar allegations and legal theories, in the Delaware action. In his reply brief, Plaintiff claims that the Delaware action fails to challenge important disclosures raised in the federal Complaint, but he fails either to identify any specific disclosures neglected by the Delaware action or to explain their importance. While the non-disclosure allegations in the consolidated Delaware complaint may be framed slightly differently from those in Plaintiff's federal complaint, the Court finds that, if anything, the Delaware non-disclosure allegations are more detailed and comprehensive than those contained in the federal pleading. *Compare* Compl. ¶¶ 105-108, *with* Decl. of David Priebe in Opp'n to Pl.'s Mot. for a Prelim. Inj. and Expedited Discovery, Ex. B ¶¶ 65-79. Accordingly, the Court is not persuaded that the Delaware litigation is insufficient to protect the rights of Plaintiff and the shareholder class, particularly given that Plaintiff's exclusive federal claims will proceed in federal court. With regard to his state-law claims, Plaintiff will remain a member of the purported class in the Delaware actions, and his rights and interests will be fully protected in those proceedings. Accordingly, the sixth factor of the *Colorado River* analysis favors a stay.

Weighing the factors relevant to the instant case and subjecting them to "a flexible balancing test, in which one factor may be accorded substantially more weight than another depending on the circumstances of the case," *Holder*, 305 F.3d at 870-71, the Court concludes that a stay of Plaintiff's state-law class action claims is warranted. As discussed above, the class claims raise heightened concerns about piecemeal litigation, fall within the Delaware court's unique expertise in Delaware corporate law, and are virtually identical to the state-law claims raised in the Delaware actions. The proposed Delaware class action is capable of fully protecting the rights of

1   Plaintiff and the purported shareholder class, and the Delaware court has already begun to move
2   forward with discovery and litigation of these claims.  Taken together, these facts present the
3   "exceptional circumstances" required to support a stay under the *Colorado River* doctrine.  *See*
4   *Countrywide*, 542 F. Supp. 2d at 1172-74 (abstaining from state-law class action claims under a
5   similar analysis).  Moreover, a stay of the state-law class action claims will neatly divide this
6   litigation between the federal claims asserted only on behalf of Plaintiff as an individual and the
7   claims brought under Delaware law on behalf of a nationwide class.  Based on these
8   considerations, the Court GRANTS the Qualcomm Defendants' request to stay with respect to
9   Plaintiff's class action claims for breach of fiduciary duty and aiding and abetting under Delaware
10  law.  Plaintiff's claims under the Securities Exchange Act, however, will proceed in federal court.

### III. Preliminary Injunction

Having determined that Plaintiff's state-law claims should be stayed in favor of the Delaware action, the Court must consider whether Plaintiff may still seek a preliminary injunction in this Court.  Presumably, Plaintiff may seek a preliminary injunction based on Defendants' alleged violation of Sections 14(a) and 20(a) of the Securities Exchange Act and the harm that Plaintiff, as an individual, will suffer if the shareholder vote is not enjoined.  As the Atheros Defendants point out, however, Plaintiff has not done so.  Plaintiff's motion for preliminary injunction addresses the merits only of the Delaware-law claims and relies solely on Delaware law.  Whether the shareholder class is entitled to a preliminary injunction on the basis of the Delaware-law claims will be decided by the Delaware Court of Chancery, which held a preliminary injunction hearing on March 1, 2011, prior to the hearing held by this Court.  Because Plaintiff's current motion is based on claims that the Court has determined should be stayed, the instant motion for preliminary injunction is DENIED.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' request to stay Plaintiff's state-law class action claims and DENIES Plaintiff's motion for preliminary injunction.  Plaintiff's

1  federal claims under Sections 14(a) and 20(a) of the Securities Exchange Act are not stayed, and
2  litigation of these claims may move forward.
3  **IT IS SO ORDERED.**

5  Dated: March 4, 2011                                    _____
                                                           LUCY H. KOH
                                                           United States District Judge