PILLSBURY WINTHROP SHAW PITTMAN LLP
DAVID M. FURBUSH  # 83447
2475 Hanover Street
Palo Alto, CA 94304-1114
Telephone: (650) 233-4500
Facsimile: (650) 233-4545
david.furbush@pillsburylaw.com

RANAH L. ESMAILI  # 233477
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1000
Facsimile: (212) 858-1500
ranah.esmaili@pillsburylaw.com

Attorneys for Defendants Atheros
Communications, Inc., Willy C. Shih,
Teresa H. Meng, Craig H. Barratt,
Andrew S. Rappaport, Dan A. Artusi,
Charles E. Harris, Marshall L. Mohr,
And Christine King

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOEL KRIEGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ATHEROS COMMUNICATIONS, INC., DR. WILLY C. SHIH, DR. TERESA H. MENG, DR. CRAIG H. BARRATT, ANDREW S. RAPPAPORT, DAN A. ARTUSI, CHARLES E. HARRIS, MARSHALL L. MOHR, CHRISTINE KING, QUALCOMM INCORPORATED, AND T MERGER SUB, INC.<br><br>Defendants. | No. 5:11-CV-00640-LHK(HRL)<br><br>**ATHEROS DEFENDANTS' REPLY MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Lucy H. Koh<br><br>Hearing Date:  May 31, 2012<br>Hearing Time: 1:30 p.m.<br>Location:  Courtroom 4, 5th Floor<br>Date Action Filed:  February 10, 2011 |

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF FAILS ADEQUATELY TO ALLEGE A FALSE OR MISLEADING STATEMENT | 2 |
| | A. The Analyst Data | 2 |
| | B. The Breakup Fee Data | 3 |
| III. | PLAINTIFF FAILS TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF NEGLIGENCE | 4 |
| IV. | PLAINTIFF FAILS TO PLEAD ECONOMIC LOSS PROXIMATELY CAUSED BY THE ALLEGED OMISSIONS | 4 |
| V. | PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER SECTION 20(A) | 5 |
| VI. | PLAINTIFF'S CLAIM FOR AN AWARD OF ATTORNEY'S FEES IS PREPOSTEROUS | 5 |
| VII. | CONCLUSION | 6 |

TABLE OF AUTHORITIES

Page

Cases

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .................................................................................................... 5

Brazen v. Bell Atl. Corp.,
    695 A.2d 43 (Del. 1997) ............................................................................................. 3

In re Pure Resources, Inc. Shareholder Litig.,
    808 A2d 421 (D. Ch. 2002) ........................................................................................ 3

Kristensen v. Spotnitz,
    2011 U.S. Dist. LEXIS 59740 (W.D. Va. June 3, 2011) ............................................ 2

Laborers Local 235 Benefit Funds v. Starent Networks Corp.,
    No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) .......................... 2

New York City Employees Ret. Sys. v. Jobs,
    593 F.3d 1018 (9th Cir. 2010) .................................................................................... 4

R.S.M., Inc. v. Alliance Capital Mgmt. Holdings,
    790 A.2d 478 (D. Ch. 2001) ....................................................................................... 3

Statutes and Codes

Securities Exchange Act of 1934,
    Section 14(a) ...................................................................................................... 1, 4, 5

Securities Exchange Act of 1934,
    Section 20(a) ............................................................................................................... 5

United States Code,
    Title 15, Section 78u-4(b)(1) ..................................................................................... 2

Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 14a-9 .......................................................................................................... 1, 4, 5

## I. INTRODUCTION

Plaintiff's opposition to the motion to dismiss the Amended Complaint is a desperate Hail Mary pass hoping to extract attorney's fees for an effort that accomplished nothing other than to burden the defendants with additional litigation on top of that which was fully resolved in Delaware Chancery Court.

Plaintiff's claim under Section 14(a) and Rule 14a-9 stands or falls on the singular question of whether the Definitive Proxy provided "a summary of the material financial analyses undertaken by Qatalyst Partners in connection with rendering the Qatalyst Partners opinion." This is the sole statement in the Definitive Proxy that is alleged to be false or misleading. Am. Compl. ¶ 101.

Plaintiff purports to support this allegation by attaching as an exhibit to the Amended Complaint a slide deck used by Qatalyst in making a presentation to Atheros's board of directors and arguing that the Definitive Proxy's description of Qatalyst's analyses did not provide a summary because it did not burden the Definitive Proxy with detailed data from two tables that appear in that slide deck. One table, entitled "Summary of Analyst Estimates & Valuation Methodologies," contains data drawn from the opinions of a number of analysts who issued publicly-available research reports on Atheros. The second table, located in an appendix to the slide deck, entitled "Historical Termination Fee Analysis," contains publicly-available data about termination fees in a large number of merger agreements.

The Court has before it everything it needs to determine, as a matter of law, that the Definitive Proxy did in fact provide a summary of the material financial analyses undertaken by Qatalyst in connection with rendering its opinion and that therefore the Amended Complaint should be dismissed for failure to state a claim. This determination can be made by comparing the description of Qatalyst's analyses in the Definitive Proxy (of which the Court may take judicial notice) to the slide deck (which is incorporated by reference into the Amended Complaint) and applying to this comparison the plain meaning of the word "summary."

## II. PLAINTIFF FAILS ADEQUATELY TO ALLEGE A FALSE OR MISLEADING STATEMENT

As stated in the Atheros Defendant's opening brief, the PSLRA requires Plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1) (2010).

Plaintiff utterly fails to meet this pleading burden.

### A. The Analyst Data

A summary is a "brief account giving the main points of something."  The Oxford Dictionaries (http://oxforddictionaries.com/definition/summary).  "[A] 'summary' is ordinarily understood to be an "abstract, abridgment, or compendium. . . ."  *Kristensen v. Spotnitz*, 2011 U.S. Dist. LEXIS 59740 (W.D. Va. June 3, 2011), citing Merriam Webster's Collegiate Dictionary 1179 (10th Ed. 1993) (holding that a party failed to provide a summary of the facts and opinions to which the witness is expected to testify as required by Fed. R. Civ. P. 26(a)(2)(C) when it filed the complete medical records of the treating physicians).  As noted in the opening brief, the Definitive Proxy accurately stated that Qatalyst considered certain publicly-available estimates by stock market analysts; thus, the proxy summarized Qatalyst's analysis of this material.  Plaintiff seeks to turn the notion of a summary on its head by arguing that a summary must include every bit of data reviewed or considered by Qatalyst.  That is not what a summary consists of.  That is the opposite of a summary.

Plaintiff cites no case to support the assertion that detailed data about publicly-available analyst reports is required to provide a summary of the analyses performed by a financial advisor.  *Laborers Local 235 Benefit Funds v. Starent Networks Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) says nothing of the sort.  In that case the Court of Chancery ordered expedited discovery where the target's financial advisor had inexplicably treated stock-based compensation as a cash expense in performing a

1  discounted cash flow analysis, while treating it as a non-cash expense for purposes of two
2  other analyses.  The case had nothing to do with disclosure of details of published analyst
3  reports.  *In re Pure Resources, Inc. Shareholder Litig.*, 808 A2d 421 (D. Ch. 2002) stands
4  for the proposition that under Delaware's exacting fiduciary standards, stockholders are
5  entitled to a fair summary of the substantive work performed by the target board's financial
6  advisor.  It says nothing about providing detailed data from opinions published by
7  unaffiliated stock market analysts.  In any event, this action asserts only claims under the
8  Federal securities laws prohibiting false and misleading statements, not under Delaware
9  fiduciary standards – which *were* applied by the Delaware Court of Chancery in
10 determining that "The Proxy Statement contains a detailed summary of Qatalyst's fairness
11 opinion."  March 4, 2011 Memorandum Opinion at p. 26 (Furbush Decl. Exh. 4).
12      **B.    The Breakup Fee Data**
13      Plaintiffs do not and cannot allege that the breakup fee data was a material part of
14 Qatalyst's analysis of the fairness of the merger consideration, from a financial point of
15 view, to Atheros's shareholders, which was the sole opinion rendered by Qatalyst.  "The
16 Qatalyst Partners opinion...addresses only the fairness, from a financial point of view...of
17 the $45 per share cash consideration...*and does not address any other aspect of the*
18 *Merger*."  Definitive Proxy, p. 28.
19      Plaintiff cites two cases for the proposition that "courts routinely find misstatements
20 and omissions regarding termination fees material": *Brazen v. Bell Atl. Corp.*, 695 A.2d 43
21 (Del. 1997) and *R.S.M., Inc. v. Alliance Capital Mgmt. Holdings*, 790 A.2d 478 (D. Ch.
22 2001).  In both cases, the plaintiffs alleged that defendants had misstated or failed to
23 disclose *the actual termination fee in the deal being presented to stockholders for approval*.
24 This information was deemed material to shareholders in deciding how to vote, but had no
25 bearing on whether a summary had been provided of the analyses underlying the fairness
26 opinion.  In any event, the allegedly omitted information here is not the termination fee in
27 this transaction – which was clearly and accurately disclosed in the Proxy – but rather data
28 about termination fees in dozens of unrelated transactions.  Plaintiff cites no case holding

- 3 -

that data of the latter type must be disclosed in order to provide a summary of the analyses performed by a financial advisor in reaching an opinion on the fairness of the merger consideration, especially where the advisor expressly does not provide an opinion about the fairness of the termination fee.

## III. PLAINTIFF FAILS TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF NEGLIGENCE

Plaintiff concedes that he is required to plead facts that give rise to a strong inference of negligence. The only "facts" plaintiff points to as supporting this requirement are that "the Atheros Defendants were presented with the 'Summary of Analyst Estimates & Valuation Methodologies' and 'Historical Termination Fee Analysis,' but decided not to include these analyses with the Definitive Proxy." These facts do not even suggest negligence, let alone provide a strong inference of it. To the contrary, these facts are perfectly consistent with the conclusion that the Atheros Defendants reasonably concluded that it was not necessary to provide this detail in order to give a summary of the material financial analyses supporting the fairness opinion.

## IV. PLAINTIFF FAILS TO PLEAD ECONOMIC LOSS PROXIMATELY CAUSED BY THE ALLEGED OMISSIONS

As the Ninth Circuit recently held, to state a claim under Section 14(a) and Rule 14a-9, a plaintiff must establish three distinct things: that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation in the materials, was an essential link in the accomplishment of the transaction." *New York City Employees Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010). Though Plaintiff alleges that the Definitive Proxy was instrumental in causing the merger to be approved by shareholders, the Complaint does not satisfy the requirement that the alleged omission in the Definitive Proxy "caused the plaintiff injury." The Ninth Circuit made clear that under the PSLRA such an injury must be an *economic* injury: "To show loss causation, a plaintiff must prove both economic loss and proximate causation." *Id.* at 1023. Plaintiff fails to

allege *any* economic loss that was proximately caused by the alleged omissions described in the First Amended Complaint.

## V. PLAINTIFF FAILS TO ALLEGE A CLAIM UNDER SECTION 20(a)

Having failed to allege a primary violation of Section 14(a) or Rule 14a-9, plaintiff's allegation of secondary liability under Section 20(a) necessarily fails.

## VI. PLAINTIFF'S CLAIM FOR AN AWARD OF ATTORNEY'S FEES IS PREPOSTEROUS

Plaintiff's request that he be awarded attorney's fees in this case for disclosures ordered by the Delaware Court of Chancery is preposterous. Plaintiff made a half-hearted motion for a preliminary injunction in this case based solely on state law claims. The motion was denied by this Court and plaintiff subsequently abandoned the state law claims on which the motion was based. Plaintiff's prosecution of his federal law claims in this Court has produced no benefit whatsoever to any shareholder of Atheros. If plaintiff seriously maintained that his efforts contributed to the Delaware Court's preliminary injunction order, he was free to ask the Court that issued that order to award him attorney's fees. The fact that no such application was made speaks volumes about the credibility of plaintiff's claim for a fee award.

Plaintiff resorts to arguing that "a motion to dismiss is not the proper forum to challenge the factual allegations in the complaint." This is not a correct statement of the law. The Court need not accept as true obviously implausible factual assertions, especially when they are contradicted by documents of which the Court may take judicial notice, such as the Opinions of the Chancery Court (Furbush Decl. Exhibits 4 and 5) and the Supplemental Disclosures (Furbush Decl. Exhibit 3), which plainly demonstrate that the Supplemental Disclosures were made specifically and solely to comply with the Chancery Court's order of March 4, 2011. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1 **VII.** **CONCLUSION**

2     For the reasons stated above, the Amended Complaint should be dismissed. As 3 there is no plausible way in which the defects can be cured, the dismissal should be with 4 prejudice.

5

6 Dated: May 3, 2012         PILLSBURY WINTHROP SHAW PITTMAN LLP
7                                     2475 Hanover Street
                                    Palo Alto, CA 94304-1114

8

                               By  */s/ David M. Furbush*
9                                    David M. Furbush

10                               Attorneys for Defendants Atheros
                              Communications, Inc., Willy C. Shih, Teresa H.
11                             Meng, Craig H. Barratt, Andrew S. Rappaport,
                            Dan A. Artusi, Charles E. Harris, Marshall L.
12                             Mohr, and Christine King

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -
ATHEROS DEFENDANTS' REPLY ISO MTN TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT